# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ISAAC D. TUMBS,**

    **Plaintiff,**

v.                                                                                     **Case No. 21-cv-860**

**JOSEPH MCLEAN,** *et al.***,**

    **Defendants.**

## ORDER

Plaintiff Isaac D. Tumbs, who is representing himself and currently confined at New Lisbon Correctional Institution, brings this lawsuit under 42 U.S.C. § 1983. (ECF No. 1.) Tumbs was allowed to proceed on an Eighth Amendment deliberate indifference claim against defendants Dr. Joseph McLean and Health Services Manager Kristin Vasquez, who allegedly failed to appropriately treat his broken finger. The parties filed cross-motions for summary judgment. (ECF Nos. 32, 38.) The motions are fully briefed and ready for a decision. The parties have consented to magistrate judge jurisdiction. (ECF Nos. 5, 16) For the reasons stated below, the court grants the defendants' motion for summary judgment and denies Tumbs's motion for summary judgment.

## PRELIMINARY MATTERS

The defendants argue that Tumbs failed to properly respond to their proposed findings of fact, failing to follow Fed. R. Civ. Pro. 56 and Civil L.R. 56, and therefore the court should deem all of their facts admitted. (ECF No. 43 at 1-2.) District courts are entitled to construe *pro se* submissions leniently and may overlook a plaintiff's noncompliance by construing the limited evidence in a light most favorable to the plaintiff. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). While Tumbs's proposed findings of fact do not formally conform with the rules, when viewed in conjunction with his declarations, his response contains sufficient facts, allowing the court to rule on the summary judgment motions. Tumbs also invokes 28 U.S.C. § 1746 in his complaint, which is enough to convert the complaint into an affidavit for the purposes of summary judgment. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017); *Owens v. Hinsley*, 635 F.3d 950, 954–55 (7th Cir. 2011). As such, the court will consider the information contained in Tumbs's submissions where appropriate in deciding defendants' motion.

## FACTS

*Tumbs's Version of Events*

Tumbs asserts that while he was incarcerated at Racine Correctional Institution, he injured his finger in July 2018, but the defendants failed "to prescribe pain medication and unreasonably delay[ed] X-Ray for surgery or ortho consult." (ECF No. 41, ¶ 1.) Tumbs states he was not examined by defendant Dr. McLean until September 2018, and he told Dr. McLean that his finger was broken "because it was

2

swollen, discolored and deformed." (*Id.*, ¶ 3.) Dr. McLean examined Tumbs and told him that his finger was "probably jammed or dislocated and not broken." (*Id.*, ¶ 4.) From January 2019 through September 2019, Tumbs continued to file medical complaints addressed to the defendants about his broken finger but was ignored. (*Id.*, ¶¶ 4-5.) Specifically, he did not receive an X-ray, MRI, or a consultation with a specialist. (*Id.*) Then when Dr. McLean examined him in September 2019, he had Tumbs's finger X-rayed that same day, which showed that his finger was broken. (*Id.*, ¶¶ 6-7.) At that point, Dr. McLean referred Tumbs to an orthopedic specialist. (ECF No. 41, ¶ 8.) In July 2020, Tumbs went to Ascension Hospital and was examined by non-defendant Dr. Barinaga, an orthopedic specialist. (*Id.*, ¶ 9.) Dr. Barinaga recommended surgery. (*Id.*). However, Tumbs still has yet to have the surgery. (*Id.*, ¶ 10.)

*The Defendants' Version of Events*

<u>Dr. McLean's Treatment</u>

According to Tumbs's medical records, on July 6, 2019, Tumbs filed a medical complaint indicating that he "ran into a wall with his hand" while playing basketball and hurt his left wrist. (ECF No. 33, ¶ 9; ECF No. 34-1 at 9-10.) Tumbs was treated by non-defendant Nurse Taylor. (*Id.*) Taylor did not notice any swelling, deformity, or discoloration, and she prescribed Tumbs ibuprofen, an ACE wrap, and ice. (*Id.*) She told Tumbs to file another Health Services Request (HSR) with the Health Services Unit (HSU) if his wrist did not improve. (*Id.*)

On July 18, 2018, Tumbs's left wrist and hand were X-rayed. (ECF No. 33, ¶ 9; ECF No. 34-1 at 13.) The X-ray did not show that Tumbs's wrist or finger were freshly broken, but it did show an older fracture on the same finger Tumbs asserts he injured but in a different location on that finger. (*Id.*) At no point in 2018 did Tumbs complain or inform the defendants about a broken finger. (ECF No. 33, ¶ 10.)

Dr. McLean examined Tumbs on February 20, 2019, and May 7, 2019, for his chronic knee pain, but Tumbs did not mention his finger at these appointments. (ECF No. 33, ¶ 10; ECF No. 34-1 at 35-37.) Dr. McLean saw Tumbs again for his chronic knee pain on September 10, 2019, and during that appointment Tumbs told Dr. McLean that his left ring finger was swollen, it hurt, and its movement was limited. (ECF No. 33, ¶ 11; ECF No. 34-1 at 34-35.) Dr. McLean confirmed that Tumbs's finger was swollen, but that it was not warm or tender. (*Id.*) He also noted that at the moment, Tumbs could move the finger normally. (*Id.*) Nevertheless, Dr. McLean ordered an X-ray. (*Id.*) Tumbs told Dr. McLean that he had stopped playing basketball or going to recreation time because of the pain. (ECF No. 33, ¶ 15.)

Dr. McLean examined Tumbs again the next day, September 11, 2019. (ECF No. 33, ¶ 12.) At that appointment, Tumbs told Dr. McLean that he injured his finger over a year ago playing basketball. (*Id.*) Dr. McLean informed Tumbs of his X-ray results, which "showed that he had an avulsion fracture and had associated degenerative changes." (*Id.*; ECF No. 34-1 at 33-34.) Dr. McLean offered Tumbs a splint, which Tumbs refused. (*Id.*) At the time, Tumbs already had prescriptions for ibuprofen, amitriptyline, naproxen, and duloxetine for his chronic pain issues, which

4

would also help to alleviate his finger pain. (ECF No. 33, ¶ 13; ECF No. 34-1 at 35-37.)

On October 9, 2019, Dr. McLean saw Tumbs for a follow-up appointment on his broken finger. (ECF No. 33, ¶ 14; ECF No. 34-1 at 32-33, 227.) During the examination, Dr. McLean noted that Tumbs "might be developing a posttraumatic arthritis in that joint" and ordered an off-site orthopedic consultation. (*Id.*) Dr. McLean is not responsible for scheduling off-site medical appointments; that is handed by administrative staff. (ECF No. 33, ¶ 16.)

On October 11, 2019, Tumbs saw Dr. Gonzalo Barinaga, an orthopedic specialist, at Ascension All-Saints Hospital. (ECF No. 33, ¶ 17.) Dr. Barinaga confirmed that Tumbs's left ring finger had "a tiny avulsion fracture at the 4th PIP joint", but informed Tumbs that surgery "may not alleviate his pain as he has early arthritis which may result in stiffness of the PIP joint which would compromise his hand function." (*Id.*, ¶ 18; ECF No. 34-1 at 230-231.) At that point, Dr. Barinaga recommended that the finger continued to be observed. (*Id.*)

In the meantime, Dr. McLean examined Tumbs on three separate occasions for injuries to his right shoulder that Tumbs sustained while playing basketball. (ECF No. 33, ¶ 17.)

At Tumbs's three-month follow up appointment with Dr. Barinaga on February 3, 2020, Tumbs again complained of pain. (ECF No. 33, ¶ 19; ECF No. 34-1 at 224.) Dr. Barinaga again told Tumbs that surgery may make his pain worse and continued to recommend observation of his finger. (*Id.*)

5

Tumbs saw Dr. Barinaga again on July 27, 2020, and stated that he wanted surgery because his finger still hurt. (ECF No. 33, ¶ 20, ECF No. 34-1 at 224.) At this appointment, Dr. Barinaga observed "significant deformity" in Tumbs's left ring finger and planned a "corrective osteotomy and collateral ligament repair." (*Id.*) Dr. McLean examined Tumbs on October 6, 2020, and referred Tumbs for surgery based off of Dr. Barinaga's recommendation. (ECF No. 33, ¶ 21; ECF No. 34-1 at 29-30.) Dr. McLean was not responsible for scheduling the surgery. (*Id.*)

Between November 17, 2020, and July 27, 2021, Dr. McLean examined Tumbs for his broken finger four times. (ECF No. 33, ¶¶ 22-23; ECF No. 34-1 at 23-24; 26-28.) The court notes that this was during the height of the COVID-19 pandemic, and at each appointment, Dr. McLean stated that surgery was still waiting to be scheduled. (*Id.*) Dr. McLean tried to other methods to alleviate Tumbs's pain while he was awaiting surgery such as providing topical anti-inflammatory in addition to his pain medications. (*Id.*) On September 21, 2021, Tumbs was transferred to Dodge Correctional Institution and on September 28, 2021, he was transferred to New Lisbon Correctional Institution. (ECF No. 33, ¶ 26.) Once Tumbs transferred out of Racine, Dr. McLean was no longer responsible for his care. (*Id.*)

Health Services Manager Kristin Vasquez's Role

As Health Services Manager at Racine, defendant Kristen Vasquez's main interaction with Tumbs was to ensure that Tumbs's HSRs or other medical

6

complaints were addressed. (ECF No. 33, ¶ 27.) She did not take part in Tumbs's medical treatment. (*Id.*, ¶ 35.) Vasquez asserts (and Tumbs's medical records confirm) that Tumbs's HSRs and medical complaints were promptly and appropriately responded to while he was incarcerated at Racine. (*Id.*, ¶ 37; ECF No. 34-1 at 18-19; 259-260; 263-286.) Regarding Tumbs's complaints concerning the delay in scheduling his surgery, HSU staff responded that they were doing their best to work with the outside provider to schedule something. (ECF No. 33, ¶ 28.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be

7

of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Tumbs claims that the defendants violated his Eighth Amendment rights by failing to appropriately treat his broken finger. A prison official violates the Eighth Amendment where he is deliberately indifferent "to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To demonstrate this, "a plaintiff must show (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). "A medical need is sufficiently serious if the plaintiff's condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Roe v. Elyea,* 631 F.3d 843 857 (7th Cir. 2011) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). The condition does not need to be life-threatening to be serious; it needs only to be "a condition that would result in further significant injury or unnecessary and wanton infliction of pain" if not addressed. *Gayton v. McCoy*, 593

8

F.3d 610, 620 (7th Cir. 2010). It is undisputed for the purposes of summary judgment that Tumbs's broken finger is an objectively serious medical condition.

To show that a prison official was subjectively and deliberately indifferent, a plaintiff must demonstrate "that an official *actually* knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (emphasis in original). The plaintiff also "must show more than mere evidence of malpractice." *Id*. The plaintiff must show that the prison official's choices "were so 'significant a departure from accepted professional standards or practices' that it is questionable whether they actually exercised professional judgment." *Stallings v. Liping Zhang*, 607 Fed. Appx. 591, 593 (7th Cir. 2015) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)).

*Vasquez's Liability*

Regarding Vasquez, there is a question of fact as to whether she ignored Tumbs's several requests for medical attention for his finger. However, this question is not material because Tumbs's own medical records contradict Tumbs's version of events. "Where opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 327, 376 (2007). As such, as Tumbs's medical records show, Vasquez (or HSU staff at her direction) appropriately and timely responded to Tumbs's several HSRs and medical complaints. The records further show that Vasquez was not involved in the treatment of Tumbs.

9

Additionally, to the extent that Vasquez played a role in the delay of Tumbs's surgery, the delay was not unreasonable and does not amount to deliberate indifference. "Delaying treatment may constitute deliberate indifference if such delay 'exacerbated the injury or unnecessarily prolonged an inmate's pain.'" *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (quoting *McGowen v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). The delays must also be "inexplicable." *Petties*, 836 F.3d at 730. The Seventh Circuit has noted that "delays are common in the prison setting with limited resources, and whether the length of a delay is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Id.* Tumbs was seeking surgery during the height of the COVID-19 pandemic when even unincarcerated people had trouble and delays in scheduling surgery. Considering that the specialist opined that the surgery was not completely necessary and more of an elective remedy, it is not surprising that by September 2021, Tumbs's surgery still had not been scheduled. Also, after September 21, 2021, Racine's HSU was no longer responsible for setting the surgery. If Tumbs still has not received surgery, he must take that up with New Lisbon Correctional Institution, who is now responsible for scheduling it. Because no reasonable factfinder could conclude that Vasquez was deliberately indifferent in handling Tumbs's broken finger, summary judgment is granted in her favor.

*Dr. McLean's Liability*

As for Dr. McLean, there is also a question of fact as to when he learned of Tumbs's broken finger, but as explained above, because the medical records directly

10

contradict Tumbs's version of events, the question of fact is not material. Further, based on Tumbs's medical records, no reasonable factfinder could conclude that Dr. McLean was deliberately indifferent. According to Tumbs's medical records, Dr. McLean was not aware of the fact that Tumbs's left hand ring finger was fractured until September 10, 2019. Upon examining Tumbs and noting the swelling, Dr. McLean had an X-ray performed that same day. Then the next day, September 11, 2019, Dr. McLean informed Tumbs of his broken finger. He offered Tumbs a splint, which Tumbs refused, and determined that Tumbs's current pain medications would manage the pain in his finger. Dr. McLean saw Tumbs a month later, and noting that Tumbs was still in pain, referred him to a specialist. Tumbs saw the specialist two days later, and in the specialist's opinion, surgery was not a good option. It took two more visits to the specialist before the specialist finally recommended surgery, and the record shows that Dr. McLean agreed with the specialist and referred Tumbs for surgery in a timely fashion. Dr. McLean is not liable for the delay in scheduling the surgery for the same reasons Vasquez is not liable—the delay was not unreasonable under the circumstances, and once Tumbs transferred, setting the surgery was no longer Dr. McLean's responsibility.

In short, once Dr. McLean actually became aware of Tumbs's broken finger, he immediately escalated care by scheduling X-rays and appointments with a specialist. As such, no reasonable factfinder could conclude that Dr. McLean was deliberately indifferent and summary judgment is granted in his favor.

## CONCLUSION

11

For the foregoing reasons, the court grants the defendants' motion for summary judgment and denies Tumbs's motion for summary judgment. The defendants also argued that they were entitled to qualified immunity. Because the court grants summary judgment in their favor on the merits, the court does not need to address the qualified immunity argument. Because there are no remaining claims, the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Tumbs's motion for summary judgment (ECF No. 38) is **DENIED**.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (ECF No. 32) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil

Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 13th day of June, 2023.

*Stephen C. Dries*
STEPHEN DRIES
United States Magistrate Judge